16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Stacey PAYNE, Defendant-Appellant.
 No. 93-5381.
 United States Court of Appeals, Sixth Circuit.
 Feb. 8, 1994.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Stacey Payne appeals his conviction for possession with intent to distribute cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1). On appeal, the issues are (1) whether the district court erred in failing to grant defendant's motion for a judgment of acquittal based on insufficiency of the evidence, and (2) whether the district court's reasonable doubt instruction was plain error. For the reasons that follow, we affirm.
 
 I.
 
 2
 At approximately 11:00 p.m. on October 18, 1991, while acting in an undercover operation targeting street level sellers of crack cocaine, Sgt. Donald Robinson of the Memphis Police Department approached several people standing outside 4375 Falcon Street, Memphis, Tennessee. Sgt. Robinson negotiated with one of the individuals to purchase crack cocaine. That individual then crossed the street and entered a house at 4372 Falcon Street. Upon returning from the house, the individual gave a rock of crack cocaine to Sgt. Robinson in exchange for twenty dollars. As the individual left, other undercover police officers arrived and placed him under arrest.
 
 
 3
 Sgt. Robinson began to walk over to assist in the arrest but then turned back because he saw that the other officers had the arrest under control. Sgt. Robinson had left his vehicle partially blocking the driveway of 4372 Falcon Street. As he was returning to his vehicle, he observed defendant Stacey Payne and another gentleman emerge from 4372 Falcon Street and enter a black automobile parked in the driveway. While defendant was rapidly backing the automobile out of the driveway, Sgt. Robinson yelled at him to stop, and defendant obeyed. Sgt. Robinson informed defendant that he was a police officer.[1] After defendant and the passenger exited the automobile, Sgt. Robinson explained that a drug dealer was being arrested, and they had nothing to worry about if they were not part of it. Officer Williams and Officer Miles then began to approach the automobile. Suddenly, defendant ran, attempting to escape. Robinson, Williams, and Miles chased defendant.
 
 
 4
 While chasing defendant, Robinson and Miles observed defendant take something out of his coat pocket and then lift his hand toward his face. Officer Williams collared defendant as he attempted to scale a fence. During the brief struggle that followed, Williams, Miles, and Anderson, another police officer who had arrived on the scene, saw an object, later found to be a plastic bag containing 19.3 grams of crack cocaine,[2] fall from defendant's mouth. Sgt. Robinson also saw something fall in front of defendant. Upon searching the attempted escape route, the officers also found a pager belonging to defendant.
 
 
 5
 On November 5, 1991, a federal grand jury returned a one-count indictment against defendant Payne, charging him with possession with intent to distribute cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1). After a three-day trial, the jury found defendant guilty of the charge contained in the indictment. The district court sentenced defendant to seventy months imprisonment followed by four years supervised release. This timely appeal followed.[3]
 
 II.
 A.
 
 6
 Defendant's first assignment of error is that there was insufficient evidence to support his conviction. At the close of the government's case-in-chief, defendant moved for judgment of acquittal under Federal Rule of Criminal Procedure 29(a), arguing that the government had presented insufficient evidence for a conviction. The district court denied the motion. After all the evidence had been presented, the defendant failed to renew his motion for judgment of acquittal.
 
 
 7
 Ordinarily, "the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). However, where, as here, a defendant fails to renew his motion for judgment of acquittal at the close of all the evidence, we review the sufficiency of the evidence only for plain error. See United States v. Rigsby, 943 F.2d 631, 644 (6th Cir.1991), cert. denied, 112 S.Ct. 1269 (1992); United States v. Faymore, 736 F.2d 328, 334 (6th Cir.) ("Absent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew that Motion at the close of all of the evidence."), cert. denied, 469 U.S. 868 (1984).
 
 
 8
 Federal Rule of Criminal Procedure 52(b) is the applicable rule governing our review for plain error. Under Rule 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court has recently set forth the considerations for an appellate court's making a plain error review. United States v. Olano, 113 S.Ct. 1770 (1993). First, we must determine whether an error occurred in the district court. Id. at 1777. Absent any error, our inquiry is at an end. However, if an error occurred, we must then consider if the error was plain. Id. If it was plain, then we proceed to inquire whether the plain error affects substantial rights. Id. at 1777-78. Finally, even if the other inquiries are satisfied, we must still consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Id. at 1779.
 
 
 9
 In this case, we need only consider the first factor, for we conclude that no error occurred in the district court concerning the sufficiency of the evidence. In order to convict a defendant for a violation of 21 U.S.C. Sec. 841(a)(1), the government must prove that defendant (1) knowingly possessed a controlled substance (2) with intent to distribute it. The district court must allow the case to go to the jury if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could find beyond a reasonable doubt that these two elements were satisfied.
 
 
 10
 There was sufficient evidence to support a jury's finding that the first element, knowing possession of cocaine base, was satisfied. Two of the officers who chased defendant as he fled testified that the defendant took something out of his pocket and raised it to his mouth as he was running. All of the officers in the area of the struggle that ensued after defendant was caught testified that a plastic bag, later found to contain crack cocaine, fell in front of defendant. Three of these four officers testified that they saw the plastic bag fall from defendant's mouth.
 
 
 11
 Defendant argues that the police officers actually gave contradictory accounts of where the bag of cocaine came from. Defendant points to one statement, as transcribed, made by Officer Williams in his testimony: "I was holding Mr. Payne by his arm and the bag came out of his hip, right flat on the ground." J.A. 89. Defendant asserts that this statement is another account of where the cocaine came from, and "[s]ince both of these accounts could not possibly be true (and since both accounts were given by police officers), a conviction is especially suspect." Appellant's Reply Brief at 9.
 
 
 12
 The problem with defendant's argument is twofold. First, when viewed in the context of Officer Williams' entire testimony, the statement defendant points to does not indicate another account of where the cocaine came from. Before Williams made the statement about the bag coming out of defendant's hip, he testified: "I observed a plastic bag to fall out of his mouth." J.A. 87. In fact, the comment pointed out by defendant was in response to the following question: "[W]hen the plastic bag came from his mouth, how far was it from you when you reached down and picked it up?" J.A. 89. And after the hip remark, Williams was identifying the plastic bag that had contained the cocaine when he stated: "What I have in front of me is the plastic bag that was in Mr. Payne's mouth when he spit it out on the ground." J.A. 89-90. Furthermore, on cross-examination, Williams testified: "I actually saw the bag come out of his mouth." J.A. 92. Therefore, Williams' testimony is clear that the cocaine came from defendant's mouth. The remark about the plastic bag coming "out of his hip" was simply a mistake, in speaking or transcription, and, in view of the rest of Williams' testimony, was not misleading.
 
 
 13
 The second problem with defendant's argument is that even if one officer said the cocaine came from defendant's hip and another said it came from defendant's mouth, the fact would still remain that it came from defendant's body. The testimony of all the officers would still be that defendant possessed the cocaine. Thus, there was sufficient evidence for a trier of fact to find beyond a reasonable doubt that defendant had knowingly possessed the crack cocaine.
 
 
 14
 There was also sufficient evidence on the second element, intent to distribute. An intent to distribute can be inferred from evidence of possession of a large quantity of the controlled substance or from a high estimated street value of the amount of drug possessed. United States v. Faymore, 736 F.2d 328, 333 (6th Cir.), cert. denied, 469 U.S. 868 (1984); see also United States v. Clark, 928 F.2d 733, 736-37 (6th Cir.) (holding that "there was sufficient evidence to support the finding of defendants' intent to distribute the cocaine given the circumstantial evidence of possession, the amount of drugs involved [21.73 grams of crack cocaine and 4.98 grams of cocaine], and the large street value which could be inferred [several hundred if not a thousand dollars of crack]"), cert. denied, 112 S.Ct. 144 and 112 S.Ct. 240 (1991).
 
 
 15
 In this case, the plastic bag that came from defendant's mouth contained 85 pieces of crack cocaine, weighing 19.3 grams. Sgt. Robinson testified that, as an undercover policeman, he had been involved in more than 1,500 purchases of crack cocaine, and the average piece of crack cocaine sold for $20. Sgt. Robinson examined the pieces of crack cocaine found in defendant's possession and testified that each would sell for approximately $20. Because of the large amount of crack cocaine in defendant's possession and the evidence that this amount had an approximate street value of $1,700, there was sufficient evidence from which a jury could properly conclude beyond a reasonable doubt that defendant had an intent to distribute the crack cocaine.
 
 
 16
 Defendant argues that intent to distribute cannot be inferred solely from the amount of the crack cocaine possessed, but rather the amount of the crack cocaine must be viewed in conjunction with the quality of the crack cocaine. In this case, the transcript does not reveal that the crack cocaine found in defendant's possession was ever tested for purity. Defendant argues it was possible that the crack cocaine in his possession was an extremely impure and weak substance, which would account for his possessing a large amount of the substance without having an intent to distribute it. He would need a large quantity of the crack cocaine for his personal consumption because the quality of it was so low.
 
 
 17
 Although defendant's hypothesis is reasonable, and it would certainly strengthen the government's case had they put in evidence about the quality of the crack cocaine seized from defendant, the government is not required to " 'remove every reasonable hypothesis except that of guilt,' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)). The government's evidence as to the value of the crack cocaine in defendant's possession was sufficient to support the jury's conclusion that defendant possessed the crack cocaine, not merely for personal consumption, but rather with an intent to distribute it.
 
 
 18
 Furthermore, this conclusion that defendant had the intent to distribute the crack cocaine was bolstered by other circumstantial evidence. First, another individual had entered the house, where defendant had been just prior to his arrest, after negotiating the sale of crack cocaine but before delivering the crack cocaine to Sgt. Robinson. Second, a beeper belonging to defendant had apparently fallen from defendant's body during the chase, and Sgt. Robinson testified that such beepers are often used by drug dealers to keep in contact with other drug suppliers and buyers. This evidence alone may not be sufficient,[4] but when we view this evidence along with the amount and value of the crack cocaine in defendant's possession, we conclude that a rational trier of fact could find beyond a reasonable doubt that defendant had the intent to distribute the crack cocaine found in his possession. Because we have concluded that there was no error since sufficient evidence was presented for the case to be sent to the jury, we need not consider the other factors of plain error review.
 
 B.
 
 19
 Defendant's second assignment of error concerns the district court's instruction on the government's burden of proof on the elements of the crime. At the jury instruction hearing, defendant objected to the proposed reasonable doubt instruction, but the district court denied the objection. After the district court read the instructions to the jury, defendant renewed his previous objection but made no further objections. On appeal, defendant does not argue that the district court erroneously denied his objection. Rather, defendant argues that the district court made a mistake when reading the instructions to the jury and the mistaken reading was misleading as to the government's burden of proof.
 
 
 20
 Specifically, defendant complains about the following charge:
 
 
 21
 The defendant has pleaded not guilty to the charges contained in this indictment and that plea puts in issue each of the essential elements of the offense charged and described in these instructions and imposes upon the government the burden of proving each of these elements by proof, or establishing each of these elements by proof beyond a reasonable doubt. J.A. 132-33 (emphasis added).[5] Defendant contends that because the district court used "or," "[t]here is a reasonable possibility that the jurors understood these instructions to mean that even if there was not evidence incriminating the Defendant beyond a reasonable doubt, they could find him guilty based on another burden of proof, or possibly just on the basis of any burden of proof whatsoever." Appellant's Brief at 8.
 
 
 22
 Because defendant did not object to this instruction before the district court, our review of this issue is only for plain error. Fed.R.Crim.P. 30, 52(b); United States v. Goodlett, 3 F.3d 976, 978 (6th Cir.1993); United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991). Defendant argues that plain error review should not apply here because there was a good reason for defense counsel's failure to object; namely, he had read the written instructions and would naturally expect the verbal instructions to be the same. In other words, he did not notice the mistake, and not noticing the mistake was understandable under the circumstances. Although this may be true,[6] it does not provide a basis for altering our standard of review. "No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " United States v. Olano, 113 S.Ct. 1770, 1776 (1993) (quoting Yakus v. United States, 321 U.S. 414, 444 (1944)). Federal Rule of Criminal Procedure 52(b) provides the Court of Appeals only a "limited power to correct errors that were ... not timely raised in the District Court." Id.
 
 
 23
 Limiting review of instructions not objected to at trial serves the purpose of discouraging the "sporting theory" of criminal justice. It prevents a defendant from sitting on his hands at trial, not objecting to errors and, therefore, not giving the trial court the opportunity to correct those errors, in hopes of urging reversible error on the appellate court. Allowing a defendant to argue that plain error review should not apply because his failure to object was understandable and excusable would encourage some lawyers' use of the sporting theory. This we refuse to do. Therefore, we will reverse the conviction only if there was plain error affecting substantial rights in the jury instruction that seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id. at 1779.
 
 
 24
 Under Olano, our first step in plain error review is to determine if there was an error. It could be argued that the verbal instruction defendant points to was an error; taken alone it might be unclear if the standard of proof is "any proof" or "proof beyond a reasonable doubt," which, of course, would be erroneous, see, e.g., In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt"). However, we do not review one jury instruction in isolation from the other instructions. We review the adequacy of a jury instruction by considering whether the instruction, viewed in the context of the entire charge, fairly and adequately informed the jury of the legal considerations relevant to its decision. E.g., United States v. Easley, 942 F.2d 405, 411 (6th Cir.1991). Therefore, for the purposes of the first step in plain error review, a jury instruction is erroneous only if the instruction, when viewed in the context of the entire jury charge, is misleading as to the relevant legal standards.
 
 
 25
 The disputed instruction in this case, when viewed in the context of the entire jury charge, could not have misled the jury. The district court clearly informed the jury that the government must prove its case beyond a reasonable doubt. First, the jury charge began:
 
 
 26
 It will be your duty to decide whether the government had proved beyond a reasonable doubt the specific facts necessary [to] find the defendant guilty of the crime charged in [this] indictment.
 
 
 27
 J.A. 126. Seven sentences later, the judge again referred to proof beyond a reasonable doubt:
 
 
 28
 The government has the duty of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.
 
 
 29
 J.A. 127. The judge defined reasonable doubt and later in the charge returned to explaining the government's burden. It was at this point that the judge instructed that defendant's plea of not guilty
 
 
 30
 imposes upon the government the burden of proving each of these elements by proof, or establishing each of these elements by proof beyond a reasonable doubt.
 
 
 31
 J.A. 132-33.
 
 
 32
 Defendant asserts that this instruction was the last instruction given on the burden of proof. Defendant argues that this would be the instruction most likely recalled by the jury, and therefore the jury would interpret the other instructions in light of this instruction. Defendant's premise is simply incorrect. The disputed instruction was followed by at least two more instructions that correctly and clearly stated that the government's burden was to prove each element of the crime beyond a reasonable doubt. A mere four sentences after the disputed instruction, the district court explained that
 
 
 33
 [t]he defendant can be found guilty of this offense only if the following facts are proved beyond a reasonable doubt, all of these following facts.
 
 
 34
 J.A. 133. And the final reference to the appropriate standard was as follows:
 
 
 35
 You must determine whether or not the evidence in this case convinces you beyond a reasonable doubt of the guilt of the accused without regard to any belief that you may have about the guilt or innocence of any other person, or persons.
 
 
 36
 J.A. 136.
 
 
 37
 When viewed in the context of the four other references to the government's burden of proof, which clearly explained that the burden of proof was beyond a reasonable doubt, the jury could not have been misled by the district court's statement that the government had the "burden of proving each of the[ ] elements by proof, or establishing each of the[ ] elements by proof beyond a reasonable doubt." J.A. 133. Therefore, there was no error for the purposes of the first step of our plain error review. Having found no error, we need not consider the other factors for plain error review.
 
 III.
 
 38
 For the reasons stated, the district court's judgment of conviction is AFFIRMED.
 
 
 
 [1]
 According to Sgt. Robinson's testimony, he stated to defendant, "I'm the Police, man." J.A. 29. However, defendant testified that Sgt. Robinson "didn't identify himself as being an officer." J.A. 111
 
 
 [2]
 Testimony of Jerry Smith stated total weight of the crack cocaine was 19.3 grams. J.A. 108. In his brief, defendant states the weight was 18.3 grams. Appellant's Brief at 5. The one gram difference is unimportant for this appeal
 
 
 [3]
 The sentencing hearing was held March 5, 1993, at which time the district court announced defendant's sentence. The defendant filed his notice of appeal on March 11, 1993, but the entry of judgment was not made until March 15, 1993. The notice of appeal was still effective because a notice of appeal filed after the announcement of a sentence but before entry of judgment shall be treated as filed after such entry. United States v. Gross, 897 F.2d 414, 415 n. 1 (9th Cir.1990)
 
 
 [4]
 In his brief defendant sets forth several other justifications for having a beeper: (1) many young students possess them as part of a fashion, (2) business and professional persons often carry them, and (3) defendant testified that he had the beeper so that his family and his child's school could contact him
 
 
 [5]
 This instruction varied from the proposed instruction, which the district court had agreed to give, in that the proposed instruction stated that the defendant's not guilty plea "puts in issue each of the essential elements of the offense described in these instructions and imposes upon the government the burden of establishing each of these elements by proof beyond a reasonable doubt." Appellant's Brief (appendix) at 18
 
 
 [6]
 It also could be argued that his failure to notice the mistake was unexcusable. Defense counsel had a copy of the written jury instructions, and nothing prevented him from following along with the verbal jury instructions